NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE NGUYEN, | Civil Action No. 12-02795 (SDW) (MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| MCDONALD'S, | December 9, 2013 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant New Mad Corporation's d/b/a McDonald's[1] ("Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b)(2). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.  FACTUAL HISTORY**

Pro se Plaintiff Jacqueline Nguyen ("Plaintiff") is Defendant's former employee. (Compl. ¶ 1.) Defendant is a franchisee of the McDonald's Corporation and operates a franchise located at 1075 Route 1, Edison, New Jersey. (Def.'s Answer ¶ 3.) From January 2012 until February 20,

---

[1] Defendant was named in the Complaint as "McDonald's"; however, Defendant has identified itself as "New Mad Corporation d/b/a McDonald's."

1

2012, Plaintiff worked in Defendant's employ. (Def.'s Br. Ex. D, Def.'s Answer to Plaintiff's Interrogatories.) Plaintiff alleges Defendant created a hostile work environment and discriminated against her on the basis of her race, color, national origin, sex, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (*See generally* Compl.) Plaintiff also alleges that Defendant discriminated against her due to her disability in violation of the Americans with Disability Act ("ADA") and based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). (Compl. ¶¶ 9-10; Pl.'s Br. 22-26.) Finally, Plaintiff claims Defendant retaliated against her and committed tortious interference with her future employment. (Pl.'s Br. 28-29.)

Prior to Plaintiff commencing employment with Defendant, she underwent surgery to release her left carpal tunnel. (Def.'s Br. Ex. C, Deposition of Robert M. Lombardi, M.D. ("Lombardi Dep.") at Tr. 20:14-20 (Feb. 5, 2013).) The surgery was conducted by Dr. Robert M. Lombardi ("Dr. Lombardi"), and occurred on November 4, 2011. (*Id.*) According to Plaintiff, Dr. Lombardi warned her that "you'll break your skin and never heal" if she was not careful with her hand. (Def.'s Br. Ex. B, Deposition of Jacqueline Nguyen ("Nguyen Dep.") at Tr. 47:2-3 (Sept. 11, 2012).) More specifically, Plaintiff alleges that Dr. Lombardi directed her to keep her hand from "a lot of wetness, hot, stressing, or cold burn or hot burn." (*Id.* at 46:18-25.) In contrast, Dr. Lombardi testified he last saw Plaintiff on November 18, 2011, and he released her at that time with no restrictions on her activities. (Lombardi Dep. at Tr. 24:6–8; 25:21–26:14.)

Plaintiff alleges that she was subjected to various forms of discrimination while in Defendant's employ. In support of her discrimination claim based on race, color, and national origin, Plaintiff alleges that she was Defendant's only Asian employee, and that she was consequently treated differently from other similarly situated employees. (Nguyen Dep. at 30:24-

32:19.) For instance, according to Plaintiff, Javier Rojas ("Rojas"), one of Defendant's managers, discriminated against her by providing uniforms and additional training to Defendant's "Spanish" employees, scheduled them more hours, and allowed them to take more breaks. (Nguyen Dep. 70:10–72:23.) The undisputed facts, however, show that Mandeep Thind ("Thind"), another manager of Defendant's, is of South East Asian/Indian descent and was responsible for creating Defendant's work schedule. (Def.'s Br. Ex. F, Deposition of Mandeep Thind ("Thind Dep.") at Tr. 26:3-5 (Nov. 26, 2012).) Additionally, Defendant's work schedule for the January 5, 2012 through February 17, 2012 period shows that Plaintiff's hours were comparable to other part-time employees. (Def.'s Br. Ex. E.) Plaintiff also alleges she was the only employee assigned to clean Defendant's lobby. (Nguyen Dep. at Tr. 50:3–51:1.) The uncontroverted evidence, however, shows that some of Defendant's other employees were also assigned to clean the lobby. (Def.'s Br. Ex. E.)

Furthermore, Plaintiff contends that Defendant's male employees were assigned more hours per week than she was. (Compl. ¶ 7.) Plaintiff also claims that younger "Spanish" females were given more hours than her. (Nguyen Dep. at Tr. 32:14–33:5.) The undisputed evidence shows, however, that both male and female employees were scheduled more hours than Plaintiff, and that Plaintiff's hours were comparable to other part-time employees, irrespective of age or gender. (Def.'s Br. Ex. E.)

Plaintiff's hostile work environment claim is predicated on an incident with Rosa Graca ("Graca"), another manager. (Nguyen Dep. 98:13–100:5.) Plaintiff alleges that Graca touched her breasts, pointed an "air hose" at her private area, and made inappropriate sexual remarks to her. (*Id.*) Plaintiff maintains that this incident occurred on January 29, 2012, at approximately

3

11:00 a.m. (*Id*. at 42:15–43:3; 98:1–12.) According to Defendant's work schedule, however, neither Plaintiff nor Graca worked on January 29, 2012. (Def.'s Br. Ex. E.)

Plaintiff last worked in Defendant's employ on February 17, 2012. (Def.'s Brief Ex. I, Certification of Maria Monteiro In Support of Defendant's Notice of Motion for Summary Judgment ("Monteiro Cert.") ¶ 2 (March 28, 2013).) Although she was scheduled to work thereafter, Plaintiff missed her subsequent shifts without providing any notice to Defendant. (*Id.* ¶ 4.) After Plaintiff missed additional shifts on February 21 and February 23, 2012, Defendant listed Plaintiff as having been terminated effective on February 20, 2012. (*Id.* ¶ 5.)

After Plaintiff's employment with Defendant ended, she attempted to secure other employment. (*See generally* Nguyen Dep. at Tr. 78:15–88:9.) These attempts were apparently unfruitful. (*Id.*) Plaintiff alleges that Defendant's failure to train her as a cashier, coupled with Rojas's comments to her prospective employers that she was not employed as a cashier with Defendant, give rise to a tortious inference with future employment cause of action. (*Id.*) Other than Plaintiff's assertions, the record of devoid of any evidence in this regard.

## II. PROCEDURAL HISTORY

On May 9, 2012, Plaintiff filed the Complaint commencing this matter, alleging various theories of employer-based discrimination during her employment with Defendant. (Dkt. No. 1.) After the completion of discovery, the Defendant filed the instant summary judgment motion on April 1, 2013, arguing that Plaintiff cannot sustain her burden of establishing a prima facie case on any of her causes of action. (Dkt. No. 46.)

## III. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## IV. DISCUSSION

### A. Title VII Causes of Action

In part, Title VII of the Civil Rights Act states as follows:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

> against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(2). Plaintiff asserts that Defendant unlawfully discriminated against her based on her race, color, national origin, gender, and religion in violation of Title VII. In cases such as this, where there is no direct evidence of discrimination, the applicable legal standards are well-settled. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### 1. Race/Color/National Origin Discrimination Claim

To be successful on a race, color, or national origin-based discrimination cause of action, the plaintiff must first establish a prima facie discrimination case by showing that: (1) she belongs to a racial minority; (2) she applied and was qualified for a job which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the incident give rise to an inference of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 208 (1973)). "Under the *McDonnell Douglas* scheme, 'establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's Honor Ctr.*, 509 U.S. at 506 (citation omitted). If the plaintiff is successful in establishing the prima facie case, the burden then shifts to the defendant to produce an explanation via the introduction of admissible evidence that the alleged adverse employment action was taken for a legitimate, nondiscriminatory purpose. *Id.* "It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff remains at all times with the plaintiff.'" *Id*. at 507 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The undisputed evidence shows that Plaintiff is a Vietnamese-American, and worked in Defendant's employ at its Edison, New Jersey location from January 2012 until February 20, 2012. As such, Plaintiff has proven the first two elements of a prima facie race/color/national origin based discrimination claim. There is insufficient evidence of record, however, for Plaintiff to establish the two remaining elements of a prima facie cause of action.

While Plaintiff's arguments are difficult to discern, it appears that Plaintiff's race/color/national origin discrimination claim is based on the alleged facts that Defendant failed to train her; that one of Defendant's managers, Rojas, scheduled her fewer hours than "Spanish" employees; that Rojas treated "Spanish" employees better than he treated her; that only Plaintiff was assigned to clean the restaurant's lobby; and that "Spanish" employees were given their uniforms, while she had to purchase her own uniform.

On the other hand, Defendant points to evidence that refutes Plaintiff's assertions. For example, Defendant highlights Rojas's deposition testimony, wherein he testified that all part-time employees, like Plaintiff, were scheduled ten (10) to twelve (12) hours per week. (Def.'s Br. Ex. G, Deposition of Javier Rojas ("Rojas Dep.") at Tr. 44:3–5 (Nov. 26, 2012).) Defendant's work schedules indicate that other employees' hours were comparable to Plaintiff's. (Def.'s Br. Ex. E.) Additionally, Defendant's work schedules show that several other employees were assigned the same tasks as Plaintiff, belying her argument that only she was assigned to clean the lobby. (*Id.*) Moreover, Defendant notes that it is undisputed that Mandeep Thind, who is of Asian descent, set the schedule during Plaintiff's employ. (Def.'s Br. 5.) This is an important fact. Plaintiff's position is that because she is Vietnamese-American, Rojas's exhibition of partiality by favoring "Spanish"

7

employees in making scheduling decisions evidences discrimination against her. Plaintiff's argument is untenable, however, since Thind set the schedule and is also of Asian descent.

In sum, there is no evidence to support Plaintiff's contention that she was discriminated against on the basis of her race, color, or national origin. None of the evidence she submitted in opposition shows that she suffered an adverse employment action or that the circumstances surrounding her employment give any inference of discrimination. In fact, the evidence of record is contrary to Plaintiff's racial discrimination allegations. Accordingly, Plaintiff is unable to advance sufficient evidence to establish a prima facie race/color/national origin discrimination claim.

### 2. Gender Discrimination Claim

Plaintiff also contends that she was subjected to gender-based discrimination. For a plaintiff to prevail on this cause of action, she must prove that (1) "she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). At the summary judgment stage, the evidence must be compelling enough to convince a reasonable finder of fact to find all of the elements of the prima facie cause of action; "[i]f a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant." *Id.*

In support of her gender discrimination claim, Plaintiff argues that every other employee received forty (40) hours per week, while she only received ten (10) hours per week. (Plf.'s Br. 21.) Importantly, Plaintiff does not advance any evidence to support this allegation. Plaintiff's bald assertion, without any evidential support, is insufficient to meet her burden of proving a prima

facie gender-based discrimination claim. In the initial instance, it should be noted that even if Plaintiff had evidence to support this assertion, it would not establish any element of her gender-based discrimination claim. Since Defendant employed both men and women other than Plaintiff and Plaintiff's allegation is that everyone *but* her received forty (40) hours per week, other women would have worked forty-hour weeks. Thus, the alleged fact that only *Plaintiff* worked ten-hour weeks offers no support for her gender-based discrimination claim. This, of course, is a moot point because the undisputed evidence shows both male and female part-time employees worked fewer than forty (40) hours per week. Additionally, Graca and Thind, both females, were full-time employees. Therefore, Plaintiff has failed to produce any evidence that proves a prima facie gender discrimination claim and consequently, her claim cannot stand. *See Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) ("If the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial,' summary judgment is proper as such a failure 'necessarily renders all other facts immaterial.'") (citation omitted).

### 3. Religious Discrimination Claim

Next, Plaintiff claims that Defendant discriminated against her based on her religion in violation of Title VII. "To establish a prima facie case of religious discrimination, the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (citation omitted). After the plaintiff demonstrates a prima facie case, the employer then has the burden to show that either "[1] it made a good-faith effort to reasonably accommodate the religious belief,

or [2] such an accommodation would work an undue hardship upon the employer and its business." *Id.*

The undisputed evidence shows that Defendant was not advised of Plaintiff's religious beliefs. Defendant's office manager certified that Plaintiff "never advised Defendant she held any particular religious belief or that any of the duties she was given or that any of the tasks she performed [in Defendant's employ] conflicted with her religious beliefs." (Def.'s Brief Ex. I, Monteiro Cert. ¶ 2.) Plaintiff does not even assert otherwise, let alone advance conflicting evidence. Therefore, the evidence clearly shows that Plaintiff's religious discrimination claim is unsupported and that Defendant is entitled to summary judgment on this cause of action.

### 4. Hostile Work Environment Claim

Plaintiff also alleges that she was subjected to a hostile work environment in the form of sexual harassment. To be successful on a hostile work environment claim, the plaintiff must prove that "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." Hutson v. P&G Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citation omitted). The first four elements establish the existence of a hostile work environment, while the fifth element establishes employer liability. *Id.*

Plaintiff's hostile work environment claim is based on an alleged incident wherein Graca accosted her in Defendant's kitchen, fondled Plaintiff's breasts, made sexually explicit remarks to Plaintiff, and pointed a "blow drying hose" at Plaintiff's genitalia in a sexual manner. (Nguyen Dep. at Tr. 36:13–40:20.) Importantly, Plaintiff maintains that this incident occurred on January 29, 2012 at around 11 a.m. (*Id.* at Tr. 42:15–43:3; 98:1–12.) The evidence of record, however,

10

belies Plaintiff's assertions of a hostile work environment. Defendant's work schedules show that neither Plaintiff nor Graca worked on January 29, 2012. Accordingly, other than Plaintiff's attestations, the record is devoid of any evidence of a hostile work environment and Plaintiff cannot demonstrate a prima facie hostile work environment claim.

### 5. Retaliation Claim

While the basis of Plaintiff's retaliation claim is unclear and difficult to discern, it appears that her claim is rooted in Plaintiff's complaints about Defendant's alleged failure to train her as a cashier and Plaintiff's complaints about discrimination she endured in the workplace, although the exact discriminatory conduct is unspecified. (Compl. ¶ 9.) For a plaintiff to establish a prima facie case of retaliation pursuant to Title VII, "a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action." *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 320 (3d Cir. 2008) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). "Once the plaintiff makes a showing that the protected activity was a 'contributing factor' to the adverse employment action, the burden shifts to the employer to demonstrate 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.'" *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)

In the initial instance, we note that the record is devoid of any evidence that Plaintiff engaged in activity protected under Title VII. While a specific complaint about discrimination is considered protected activity, *see DiIenno v. Goodwill Indus.*, 162 F.3d 235 (3d Cir. 1998), other than Plaintiff's unsupported assertions, there is nothing evidencing that Plaintiff made any

complaints about being the victim of discrimination. During her deposition, Plaintiff testified that she reported Graca's alleged discriminatory conduct to Rojas, and as a result, Rojas had her "working off the clock and start[ed] to make [her] suffer." (Nguyen Dep. at Tr. 43:4-11). Plaintiff's bald assertions are insufficient to create a genuine issue of material fact, particularly in light of the fact that while Plaintiff maintains that there exists a form or report evidencing her complaints about the incident, discovery revealed no such documents. *See Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890-91 (3d Cir. 1992) ("A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .' If the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'") (citations omitted). Even if this were sufficient to demonstrate Plaintiff's engagement in protected activity, there is no evidence to suggest that Plaintiff's complaint about the incident caused Defendant to take any adverse employment action against Plaintiff. Presumably, Plaintiff's position is that Rojas cut her hours and then eventually fired her after her complaint. The undisputed evidence proves, however, that Plaintiff continued to work approximately the same amount of hours after the incident, and that she worked until February 17, more than two weeks after the alleged incident. (Def.'s Br. Ex. E.) Additionally, Plaintiff was scheduled to work additional days after February 17, but she failed to appear for work. (Monteiro Cert. ¶ 2.) Therefore, the undisputed evidence reveals that Plaintiff did not suffer an adverse employment action after her alleged complaint about the alleged sexual harassment incident.

Furthermore, although Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") reporting the discrimination she had allegedly endured, this charge was filed on or about March 23, 2012, about a month after Plaintiff

was no longer in Defendant's employ. (Compl., Exhibit No. 2.) As such, Plaintiff's filing of the charge with the EEOC cannot be the predicate "protected activity." Consequently, Plaintiff cannot establish a prima facie case of retaliation and Defendant is entitled to summary judgment on this cause of action.

### B. ADA Claim

Plaintiff alleges that Defendant discriminated against her based upon her carpal tunnel syndrome disability. (*See* Compl.) Plaintiff had carpal tunnel release surgery on her hand prior to commencing her employment with Defendant, and she maintains that the surgeon imposed certain restrictions upon her. (Nguyen Dep. at Tr. 45:3–48:5.) Plaintiff contends that notwithstanding having a cast on her hand and the restrictions imposed by her surgeon, defendant forced her to do various activities that aggravated her condition, including, but not limited to, wiping down numerous tables, mopping the floor, carrying a large ice bucket, cleaning the lavatories, lifting and disposing of garbage, and washing dishes. (Nguyen Dep. at Tr. 19:20-23; 24:18– 25:8; 48:6–49:3; 60:15–65:1; 68:4–69:14.) Plaintiff also alleges that Defendant failed to reasonably accommodate her, despite her disability.

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Similar to employer discrimination claims brought under Title VII, in cases such as this where the plaintiff does not present direct evidence of discrimination, adjudication of the matter is governed by the

shifting burden test of *McDonnell Douglas*. *Kohn v. AT&T Corp.*, 58 F.Supp.2d 393, 406 (D.N.J. 1999). Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a non-discriminatory reason for taking the adverse employment action. *Id.* "To establish a prima facie case of disability discrimination under the ADA, [the plaintiff] must prove by a preponderance of the evidence that (1) he belongs to a protected class under the ADA, (2) he was otherwise qualified to perform the essential functions of the position, (3) he was dismissed despite being qualified and (4) he was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination." *Id.* at 412.

Contrary to Plaintiff's bald assertions, the undisputed evidence shows that after her carpal tunnel release surgery on November 4, 2011, she was not placed on any restrictions. Dr. Lombardi, the physician who performed Plaintiff's surgery, testified that Plaintiff's surgery went well and was successful. (Lombardi Dep. at Tr. 20:14–21:1) He also confirmed that he last examined Plaintiff on November 18, 2011, and at that time, he released her without any restrictions. (*Id.* at Tr. 21:2–26:14.)

In short, Plaintiff cannot prove a prima facie discrimination claim under the ADA. As a threshold matter, the record evidence shows that Plaintiff was *not* disabled. Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of … [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(2). Plaintiff's treating physician testified that as a result of her successful surgery, he placed Plaintiff on no restrictions. As such, Plaintiff had no physical impairment that substantially limited her major life functions. Nor is there a record of such an impairment, and Plaintiff is not regarded as having such an impairment. Furthermore, Plaintiff has not produced expert testimony opining that she met the ADA's

definition of disabled. As such, Plaintiff cannot establish that she belongs to a protected class under the ADA and Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim.

### C. ADEA Discrimination Claim

Plaintiff alleges that she was discriminated against because of her age in violation of the ADEA. The ADEA was enacted "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Under the ADEA, it is unlawful for employers to refuse to hire, to fire or to discriminate against an employee "with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff's ADEA claim is also governed by the *McDonnell Douglas* shifting burden test as Plaintiff has not advanced direct evidence of age discrimination. *Kohn*, 58 F.Supp.2d at 406. A plaintiff can establish a prima facie age discrimination case by demonstrating that "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009)).

It is undisputed that Plaintiff is over forty years of age. There is no evidence of record, however, to suggest that Plaintiff suffered any adverse employment action due to her age or that she was replaced by a sufficiently younger employee so that a discriminatory animus can be inferred. Plaintiff's age discrimination allegations are based on general assertions that Defendant

hired younger "Spanish" employees. (Nguyen Dep. at Tr. 32:12–33:5; 61:10–14.) There is no evidence to infer that Plaintiff was replaced by a younger employee. In fact, by Plaintiff's own allegations, Defendant hired the younger employees *during* her employment. (*Id.*) Therefore, the evidence of record does not support a prima facie ADEA claim and Defendant is entitled to summary judgment on Plaintiff's ADEA cause of action.

### D. Tortious Interference Claim

Last, Plaintiff asserts a common law claim for tortious interference with regard to her future employment. "An action for tortious interference with a prospective business relation protects the right 'to pursue one's business, calling or occupation free from undue influence or molestation.'" *Printing Mart–Morristown v. Sharp Elecs., Corp.,* 116 N.J. 739, 750 (1989) (quoting *Louis Kamm, Inc. v. Flink,* 113 N.J.L. 582, 586 (E. & A.1934)). In order to establish a claim for tortious interference with prospective contractual relationship or economic advantage, a plaintiff must prove the following elements: (1) she was in the pursuit of business; (2) the interference was intentional and done with malice; (3) "the interference caused the loss of the prospective gain"; and (4) and the interference caused damages. *Printing Mart- Morristown*, 116 N.J. at 751-52.

Plaintiff's cause of action is based on her allegations that Rojas informed prospective employers that Plaintiff was not a cashier while in Defendant's employ. (Nguyen Dep. at Tr. 78:15–88:9.) Other than Plaintiff's bare assertions, there is no evidence to corroborate her allegations. There are not any sworn affidavits, deposition testimony, or any other evidence from prospective employers verifying that they failed to hire her due to Rojas's alleged comments. As such, the evidence of record is insufficient to establish a prima facie case of tortious interference. *See Solomon v. Bristol-Myers Squibb Co.*, 916 F. Supp. 2d 556, 562 (D.N.J. 2013) ("Indeed, the plain language of [Federal Civil Procedure] Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

16

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") Therefore, Defendant is entitled to summary judgment on Plaintiff's tortious inference cause of action.

## V. CONCLUSION[2]

In conclusion, this Court finds that the evidence of record shows that Plaintiff cannot establish the elements of a prima facie claim on any of her causes of action. Therefore, this Court **GRANTS** Defendant's summary judgment motion.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
      Parties

---

[2] In her opposition brief, Plaintiff included numerous parties in the caption that were not named in the initial Complaint. (Pl.'s Br. 1.) Plaintiff was advised by an Order entered September 20, 2012, by the Hon. Madeline C. Arleo, U.S.M.J., that any amended pleading must be via motion practice. (Dkt. No. 21.) Since Plaintiff has failed to file such a motion, the additional parties included in the caption are hereby disregarded.